**Pauline LATOUR, Administratrix**

v.

**COMMERCIAL UNION INSURANCE CO., et al.**

**Jeannine BUTLER, Administratrix**

v.

**COMMERCIAL UNION INSURANCE CO., et al.**

**Maurice MARTEL and Katherine Martel**

v.

**COMMERCIAL UNION INSURANCE CO., et al.**

**Civ. A. Nos. 78–035, 78–036 and 79–023.**

United States District Court,
D. Rhode Island.

Nov. 13, 1981.

Edward Swartz, Boston, Mass., for plaintiffs.

David Carroll, Providence, R. I., for defendants.

## OPINION AND ORDER

PETTINE, Chief Judge.

Commercial Union Insurance Co., [hereinafter referred to as CU], has moved for summary judgment in the above-entitled actions, claiming that it is immune from tort liability in these cases under the Rhode Island Workers' Compensation Act, R.I.G.L. §§ 28–29–1 *et seq.* Plaintiffs strongly dispute that any such immunity exists. After careful consideration of the respective arguments, the Court is convinced that the proper reading of this Court's opinion in *Mustapha v. Liberty Mutual Insurance Co.*, 268 F.Supp. 890 (D.R.I.), *aff'd*, 387 F.2d 631 (1st Cir. 1967), requires that defendant's several motions be denied.

As an initial matter, it must be remembered that to succeed on a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, the moving party must first establish the absence of genuine issues of material fact. In determining whether such genuine issues of material fact exist,

> the court must "look at the record . . . in the light most favorable to . . . the party opposing the motion . . . ." Similarly, the court must indulge all inferences favorable to the party opposing the motion. These rules must be applied with recognition of the fact that it is the function of summary judgment, in the time hallowed phrase, "to pierce formal allegations of facts in the pleadings . . .", and to determine whether further exploration of the facts is necessary.
>
> *John Sanderson & Co. v. Ludlow Jute Co., Ltd.*, 569 F.2d 696, 698 (1st Cir. 1978), *quoting Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir. 1975), *cert. denied*, 425 U.S. 904 [96 S.Ct. 1495, 47 L.Ed.2d 54] (1976).

See *McCoy v. Garland Industries, Inc.*, C.A. No. 79–0481 (D.R.I. Dec. 22, 1980). If no material facts are disputed on the record before me, I must then view the evidence in the light most favorable to the party opposing the motion and determine whether, as a matter of law, judgment should be rendered for the moving party. *Fristoe v. Reynolds Metals Company*, 615 F.2d 1209, 1213 (9th Cir. 1980).

With this in mind, I find that the following facts are not seriously in dispute: This action arises out of an explosion and fire which occurred at the Peterson/Puritan,

Inc. plant in Cumberland, Rhode Island on January 17, 1976. In that accident, Gerard Latour, husband of plaintiff Pauline Latour, and Paul Butler, husband of plaintiff Jeannine Butler, sustained injuries which eventually resulted in their deaths. Plaintiff Maurice Martel was also severely injured. All three men were employees of Peterson/Puritan at the time of the accident, and consequently were covered by the Rhode Island Workers' Compensation Act. Plaintiff Maurice Martel and the estates of Gerard Latour and Paul Butler petitioned for and were duly awarded workers' compensation benefits.

The defendant, CU, is the workers' compensation insurer for Peterson/Puritan, Inc. CU also acts as the general liability insurer for Peterson/Puritan, and serves as a risk management consultant to the company in return for further compensation above and beyond what is paid in premiums for workers' compensation and liability insurance coverage. Plaintiffs allege that CU, acting not in its role as workers' compensation insurer, but in its capacity as general liability insurer and risk management consultant, undertook to perform certain safety inspections at the Peterson/Puritan plant in Cumberland. Plaintiffs further claim that the defendant acted negligently in carrying out this undertaking, and that such negligence proximately caused their injuries. The defendant argues that, accepting the truth of all of plaintiffs' allegations, the defendant is nevertheless immune from tort liability because it is the workers' compensation insurer of plaintiffs' employer.

The Rhode Island Workers' Compensation Act [1] provides that the remedy available under the Act "shall be in lieu of all rights and remedies ... now existing, either at common law or otherwise...." R.I.G.L. § 28–29–20. The Act, however, does permit an employee who has received workers' compensation to sue for damages when his injury "was caused under circumstances creating a legal liability in some person other than the employer to pay damages in respect thereof...." R.I.G.L. § 28–35–58.[2] In *Mustapha v. Liberty Mutual Insurance Co.*, 268 F.Supp. 890 (D.R.I.), *aff'd*, 387 F.2d 631 (1st Cir. 1967), this Court held that the workers' compensation insurer of an employer was not a "person other than the employer," and thus was not amenable to suit under this provision. The Court noted that numerous provisions of the Workers' Compensation Act equated the workers' compensation insurer with the employer, and concluded that the legislature intended to extend the employer's immunity under this provision to the compensation insurer. *Id.* at 892–93.

The present case raises the issue of whether *Mustapha* should be read narrowly or broadly. Defendant seeks a broad reading which would immunize all the activities

---

1. The law of Rhode Island as "declared by its Legislature in a statute or by its highest court in a decision" is, of course, controlling in this diversity case. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938).

2. The full text of this section reads as follows: Liability of third person for damages.— Where the injury for which compensation is payable under chapters 29 to 38, inclusive, of *this title, was caused under circumstances* creating a legal liability in some person other than the employer to pay damages in respect thereof, the employee may take proceedings, both against that person to recover damages and against any person liable to pay compensation under said chapters for such compensation, but shall not be entitled to receive both damages and compensation; and if the employee has been paid compensation under said chapters, the person by whom the compensation was paid shall be entitled to indemnity from the person so liable to pay damages as aforesaid, and to the extent of such indemnity shall be subrogated to the rights of the employee to recover damages therefor; provided, however, that when money has been recovered either by judgment or by settlement by such employee from the person so liable to pay damages as aforesaid, by suit or settlement, and the employee is required to reimburse the person by whom the compensation was paid, the employee or his attorney shall be entitled to withhold from the amount to be reimbursed that proportion of the costs, witness expenses, and other out-of-pocket expenses and attorney fees which the amount which the employee is required to reimburse the person by whom compensation was paid bears to the amount recovered from the third party.

of a workers' compensation insurer which aim at securing a safe workplace, whether such actions are taken in its capacity as workers' compensation insurer or otherwise. Plaintiffs contend for a narrower interpretation which would confer immunity on an insurer only for activities undertaken in its capacity as workers' compensation carrier.

■ The parties have called my attention to a recent decision of a Rhode Island Superior Court which addresses this very question. In *Heal v. C.E. Maguire, Inc.*, C.A. No. 78–3952 (Super.Ct. Providence County July 27, 1979) (unpublished opinion),[3] the court adopted a narrow reading of *Mustapha*, holding that when an insurer acts in the dual capacity of providing both liability and compensation insurance, the immunity accorded its activities as compensation carrier does not necessarily extend to its activities as liability insurer. *Id.* at 16. While this decision of a lower state court is entitled to some weight, it is not controlling, and this Court is required to make its own determination of state law as it believes the highest court of Rhode Island would interpret it. *Commissioner of Internal Revenue v. Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967); *Mustapha v. Liberty Mutual Insurance Co.*, 387 F.2d at 632.

Analysis should begin with an examination of the reasoning behind this Court's decision in *Mustapha*. While noting that by its terms the Rhode Island Workers' Compensation Act "did not specifically grant immunity to a compensation insurer," the Court nevertheless extended the employer's immunity under the Act to workers' compensation carriers because the statute essentially equated employers with their compensation carriers throughout its many pro-

visions. *Id.* at 892–93. However, there is no indication whatsoever that the legislature intended to extend immunity from liability to all persons who assist in making the workplace safe by conducting safety inspections.[4] There is therefore no reason for finding liability insurers or risk management consultants immune under the Act. The fair reading of the statute in *Mustapha* suggested that such immunity was granted only to employers and their workers' compensation insurers.

■ As the Court understands the argument, defendant does not really contest this proposition. Rather, it argues that the statute should be read to confer blanket immunity on workers' compensation carriers for all their activities, whether or not such activities are performed in the insurer's capacity as workers' compensation carrier. This argument overlooks the fact that immunity is essentially a functional concept which attaches to activities, not entities. Thus, judicial immunity attaches only when a judge is exercising judicial authority; it does not protect judges from liability for tortious actions that are unrelated to judicial functions. *See Stump v. Sparkman*, 435 U.S. 349, 355, 98 S.Ct. 1099, 1104, 55 L.Ed.2d 331 (1978). Likewise, workers' compensation carriers should enjoy immunity from liability only for activities undertaken in their capacity as compensation insurers.

The decision in *Mustapha* intimated as much when it observed that "Liability of the [workers' compensation] insurer as a negligent third party, *when performing an act necessary to the proper carrying out of its function under the act,* does not fit into the legislative program." *Id.* at 894, *quoting Kotarski v. Aetna Casualty & Surety*

---

**3.** This decision was rendered in a case arising out of the same accident involved here and in which CU was also a defendant. Consequently, plaintiffs claim that CU is collaterally estopped from relitigating this issue. Because of the decision reached on the merits, I find it unnecessary to reach the difficult issue of whether collateral estoppel on a question of law would be appropriate here. *See* Restatement of Judgments § 70; 1B J. Moore & T.

Currier, Moore's Federal Practice, ¶ 0.448 (2d rev. ed. 1980).

**4.** Only one court appears to have read immunity under a Workers' Compensation Act this broadly, absent specific statutory direction. *Allen v. Employers Service Corp.*, 243 So.2d 454 (Fla.App.1971). The court in *Allen*, however, relied on policy considerations which are at least open to question. *See* p. 236 infra.

Co., 244 F.Supp. 547, 558 (D.Mich.1965), aff'd, 372 F.2d 95 (6th Cir. 1967) (applying Michigan law) (emphasis added), *overruled because of change in Michigan law, Ruth v. Bituminous Casualty Corp.*, 427 F.2d 290, 293 (6th Cir. 1970).

Other courts which have found workers' compensation insurers immune under similar statutes, have likewise suggested that such immunity attaches only to actions that are an integral part of the compensation carriers' function. The court in *Kotarski v. Aetna Casualty & Surety Co., supra*, at 558, observed that:

> If the activity of the insurer, for which it was alleged to be negligent, bore no substantial relationship to its position as the employer's workmen's compensation carrier, (e.g., if an automobile collision occurred between the employee, while driving his employer's vehicle on the employer's business, and a vehicle operated by the insurance company's employee who also happened to be acting in the course of his employment) there would be no logical reason to hold the carrier to be immune. However, where the carrier is performing an integral part of its function under the Workmen's Compensation Act, it should be immune under the same reasoning which makes it immune when performing a required activity.

The Second Circuit in *Bartolotta v. Liberty Mutual Insurance Co.*, 411 F.2d 115, 119 (2d Cir. 1969), while finding that a workers' compensation insurer was immune under a Connecticut statute, nevertheless endorsed "the sensible proposition that the insurer is not immune when its negligence is quite unrelated to its role as workmen's compensation carrier."

The courts of Georgia have squarely adopted the position advocated here. In *Sims v. American Casualty Co.*, 131 Ga.App.

461, 206 S.E.2d 121 (Ct.App.), *aff'd sub nom. Providence Washington Insurance Co. v. Sims*, 232 Ga. 787, 209 S.E.2d 61 (1974), the plaintiff claimed that the defendant workers' compensation insurer had negligently conducted safety inspections in its capacity as general liability insurer of plaintiff's employer. The court in finding for plaintiff, held that, although a Georgia statute conferred immunity on workers' compensation carriers, other insurers of the employer were not immunized by the statute, "and, moreover, the compensation insurer itself is not so immunized if it occupies the relation of insurer in any capacity other than compensation insurer." *Id.* at 130. *See Gray v. Charles Beck Machine Corp.*, 495 F.Supp. 250, 252 (S.D.Ga.1980) (following *Sims*).

The Court's research has disclosed only one case that has squarely held[5] that an insurer which was immune from liability in its capacity as workers' compensation carrier was also immune in its role as liability insurer. The Wisconsin Supreme Court in *Kerner v. Employers Mutual Liability Insurance Co.*, 35 Wis.2d 391, 151 N.W.2d 72, 77 (1967), stated that, "The dual roles of the compensation insurance carrier are so intertwined that the existence of the compensation claim as the exclusive remedy means no cause of action against that carrier in its capacity of public liability carrier." To the extent that the roles of compensation carrier and liability insurer are indeed "intertwined," problems of proof may arise. Plaintiffs will bear the burden of proving that the allegedly negligent inspections in the case at bar were not related to CU's role as workers' compensation insurer, and would have been performed even if CU had not been the workers' compensation carrier of Peterson/Puritan. Such proof problems may be formidable, but this is no reason to deny plaintiffs a cause of action altogether.

**5.** In two cases, *Modjeski v. Atwell, Vogel & Sterling, Inc.*, 309 F.Supp. 119 (D.Minn.1969), and *United States Fidelity & Guaranty Co. v. Theus*, 493 P.2d 433 (Okl.1972), insurance companies that provided an employer with both workers' compensation and liability insurance were found immune from tort liability under the relevant workers' compensation statutes.

In neither case, however, were there any allegations that the insurers had negligently performed safety inspections in their role as liability insurers, and there was no discussion of the precise issue raised by this case. *See also Love v. Flour Mills of America*, 647 F.2d 1058, 1061 (10th Cir. 1981) (following *Theus*).

■ The defendant points out that if plaintiffs eventually obtain a judgment against it, it will be subrogated to plaintiffs' rights in the judgment under R.I.G.L. § 28–35–58. In essence, defendant will have a claim against itself for amounts it has already paid to plaintiffs as workers' compensation. I observed in *Mustapha* that "such subrogation makes logic a foolish game." *Id.* at 893. But although this process is somewhat irrational, this fact standing alone is insufficient to justify denying plaintiffs a cause of action in this case. Other courts have noted that subrogation in this situation merely gives the insurer a right to set off any judgment eventually entered against it by the amount it has already paid out in workers' compensation. *Mager v. United Hospitals of Newark*, 88 N.J.Super. 421, 212 A.2d 664, 668 (1965), *aff'd*, 46 N.J. 398, 217 A.2d 325 (1966); *Fabricius v. Montgomery Elevator Co.*, 254 Iowa 1319, 121 N.W.2d 361, 93 A.L.R.2d 591, 596 (1963). This process equitably adjusts the relations of the parties in accordance with the statute's intent.

■ To summarize, the Court finds that while workers' compensation insurers enjoy immunity from tort liability under R.I.G.L. § 28–35–58, such immunity attaches only to activities undertaken in the insurer's role as compensation carrier. The Court is aware that serious policy implications attend the determination of the proper scope of immunity in this important area. The court in *Allen v. Employers Service Corp.*, 243 So.2d 454, 455–56 (Fla.App.1971), relied on such policy considerations in extending immunity under the Florida Workers' Compensation Law to all persons who provide safety inspection and advisory services. The court reasoned that a contrary view would create "an effective deterrent" to the use of expert inspection services because the increased risk of liability would be reflected in higher charges for such services.

This Court believes, however, that other important policy considerations must be taken into account. As an initial matter, I find it difficult to say whether or not safety inspections will be deterred by a ruling that refuses to accord such activities broad immunity. As a practical matter, such inspections are frequently motivated by the employer's own interest in minimizing accidents and reducing insurance costs. *See Brown v. Travelers Insurance Co.*, 434 Pa. 507, 254 A.2d 27, 30 (1969). Whether the increase in the cost of safety inspections occasioned by a decision limiting the scope of insurer immunity will be so great as to outweigh the cost savings achieved by such inspections cannot be determined with any degree of precision.

A decision not to immunize negligent safety inspections from tort liability will also produce greater financial incentives for liability insurers and risk management consultants to conduct inspections with reasonable care. This is particularly important because safety inspections may induce a belief that further corrective action is not required. As a consequence, a negligent inspection may be worse than no inspection at all.[6] *Fabricius, supra*, 254 Iowa 1319, 121 N.W.2d 361, 93 A.L.R.2d at 597.

In short, the policy considerations involved in determining the appropriate scope of insurer immunity in this context are indeed complex. As such, they are better left to the consideration of a legislature than a court. As one commentator has observed, "Sometimes this maxim appears as the last refuge of a cautious court confronted with a hard decision. But here it

---

**6.** One further policy consideration deserves mention here. It is possible that the finding that CU is not immune in this limited situation may to some extent impair the smooth functioning of the workers' compensation process. That process relies to some extent on informal proceedings in which both parties cooperate to achieve an expeditious resolution of the matter. Parties that view themselves as potential litigants in a subsequent tort action may be less willing to cooperate. *Modjeski v. Atwell, Vogel & Sterling, Inc., supra*, [309 F.Supp.] at 123; *Barrette v. Travelers Insurance Co.*, 28 Conn. Supp. 1, 246 A.2d 102, 105–06 (Super.Ct.1968). Whether this impairment is of such weighty concern as to justify denying plaintiffs a right of action against workers' compensation insurers that negligently cause injury while acting in an unrelated capacity is a matter best left to the legislature.

makes good sense." 2A A. Larson, Workmen's Compensation Law, § 72.90 at 226.59.

For the reasons set forth in this opinion, defendant's motions for summary judgment in these cases are hereby denied.

So ordered.